STATE OF NORTH CAROLINA v. BRENDA GRONER HOYLE

No. 8026SC311

(Filed 7 October 1980)

1. **Criminal Law § 29– competency to stand trial**

    The trial court's determination that defendant was competent to stand trial was supported by the evidence, including the testimony of a psychiatrist who examined defendant at the court's request.

2. **Criminal Law § 63– testimony by psychiatrist – results of test given by another – hearsay**

    A psychiatrist's testimony that her diagnosis of defendant was based in part on a personality inventory test administered to defendant by a psychologist which indicated that defendant's behavior pattern is often seen in persons who are habitual liars was incompetent hearsay and its admission was prejudicial to defendant since (1) the psychologist who administered the

State v. Hoyle

test was not present at defendant's trial and therefore could not be cross-examined; (2) there was no evidence that the test was properly administered; (3) neither the psychologist who administered the test nor the psychiatrist stated whether the conditions found on the date of the test were temporary or permanent in nature; (4) the psychiatrist's testimony was admitted to prove the truth of the matter asserted therein; and (5) the trial court did not instruct the jury to limit the evidence for a particular purpose.

APPEAL by defendant from *Snepp, Judge.* Judgment entered 25 October 1979 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 10 September 1980.

Defendant was charged in a bill of indictment, proper in form, for the offense of murder in the second degree. Defendant was found guilty of murder in the second degree and, from the imposition of a sentence of confinement of not less than eight nor more than twelve years, appealed.

*Attorney General Edmisten, by Associate Attorney General Francis W. Crawley.*

*Lacy W. Blue, for defendant appellant.*

ERWIN, Judge.

[1] Defendant contends that the trial court committed error in finding defendant competent to stand trial. We do not agree.

G.S. 15A-1002 provides a comprehensive procedure to determine incapacity of a defendant to proceed in a criminal trial. We note that defense counsel did not follow any remedies provided by statute. The court, on its own motion, raised the issue of defendant's capacity to proceed.

The court stated at a bench conference with counsel for the State and for the defendant: "Gentlemen, I have serious doubts that this woman is competent to stand trial. I have sent for the report from Dorothea Dix. They said she is competent. I have serious doubts that she is competent to stand trial after this rambling testimony."

The following morning, Dr. Mary Rood testified at the request of the court, and the court entered the following:

"COURT: All right. Thank you, doctor. All right. Take this for the record. During the trial on October 23, 1979, the court observed the defendant while she was testifying, and

the manner of her speech and delivery, and some question arose in the court's mind as to whether the defendant is presently competent to stand trial.

At the request of the court, Dr. Mary Ann Rood, psychiatrist from the Forensic Unit at Dorothea Dix Hospital, Raleigh, N.C., talked with the defendant in the Mecklenburg County Jail where she had been placed by the court overnight. Dr. Rood's opinion is that the defendant is able to comprehend her position, to understand the nature and object of the proceedings against her and to assist her attorney in her defense in a rational manner.

The court therefore finds that the defendant is presently competent to stand trial.

To each and every one of the court's findings of fact and to each and every one of the court's conclusions of law, the defendant in apt time objects and excepts.

DEFENDANT'S EXCEPTION NO. 3"

The record reveals that Dr. Thomas Fox and Dr. Edward C. Holscher, both expert in the field of psychiatry, testified for defendant, and neither stated that defendant was unable to stand trial by reason of her mental condition. Defendant did not make any inquiries into this area of defendant's mental health.

The evidence in the record is sufficient to support the trial judge's findings of fact, and the findings of fact support the conclusion of law. Where, as here, the court's findings of fact are supported by competent evidence, they are conclusive on appeal. *State v. Willard*, 292 N.C. 567, 234 S.E. 2d 587 (1977); *State v. Cooper*, 286 N.C. 549, 213 S.E. 2d 305 (1975). Defendant's reliance on *State v. O'Kelly*, 285 N.C. 368, 204 S.E. 2d 672 (1974), and *State v. Wheeler*, 249 N.C. 187, 105 S.E. 2d 615 (1958), is misplaced. We overrule this assignment of error.

[2] By Exception Nos. 4, 5, 6, 7, and 8, defendant raises the question: "Was it error to allow the psychiatrist to testify that the Defendant is a habitual liar, if testimony is based upon test administered by a psychologist?" We feel that testimony was improperly admitted to defendant's prejudice.

The record reveals the following: "The court finds as a fact that Dr. Rood is an expert in the field of psychiatry."

Dr. Rood testified for the State, in part:

"The purpose of the M.M.P.I. [Minnesota Multiple Personality Inventory] test is to give a picture of the patient's personality, what sort of person he is. You don't do well or badly on it. It just gives a picture. It indicates to the psychologist who interpreted it —

Objection of the defendant.

Sustained by the court.

This test was administered to Mrs. Hoyle and it was used as a basis for my diagnosis.

Q. Tell the jury how she did on that test.

For that the court did overrule the objection of the defendant.

DEFENDANT'S EXCEPTION NO. 4

A. There was an extreme elevation of the lie scale. The lie scale is an index of how truthful a person is and an extreme elevation of the lie scale indicated that a person is likely to be unreliable in his statements.

For that the court did overrule the motion of the defendant to strike this answer.

DEFENDANT'S EXCEPTION NO. 5

Q. Taking all of those elevated scales together, did the psychologist who administered those tests reach any overall findings as to the defendant, Mrs. Hoyle?

For that the court did overrule the objection of the defendant.

DEFENDANT'S EXCEPTION NO. 6

A. Would it be acceptable to read the psychologist's —

COURT: No. Did she reach any findings?

MR. REUSING: First you will need to answer yes or no as to whether there were any findings.

A. Yes, there were findings.

Q. What were those findings?

The court sustained the objection of the defendant.

Q. Again, Dr. Rood, did you rely on these findings from the psychologist at Dorothea Dix Hospital in making your diagnosis about the defendant's condition?

For that the court did overrule the objection of the defendant.

DEFENDANT'S EXCEPTION NO. 7

A. I used them in making my diagnosis.

Q. What, if anything, did the psychologist indicate to you?

For that the court did overrule the objection of the defendant.

DEFENDANT'S EXCEPTION NO. 8

A. The Pattern on the M.M.P.I. is one that is associated with acting out behavior. Her particular pattern is sometimes seen in people who tell lies habitually and unnecessarily, and act on impulses indiscriminately."

Dr. Rood testified further: "When it came right down to putting my opinion on paper, I was relying more on my own observation than I was on all the other data. I took all the other data into consideration."

In this case, the State relies on *State v. DeGregory*, 285 N.C. 122, 130-31, 203 S.E. 2d 794, 800 (1974), where it is stated:

"Over defendant's objection the solicitor was permitted to propound the following question to Dr. Robert Rollins, Superintendent of Dorothea Dix Hospital, a medical expert specializing in the field of psychiatry: 'Based upon your own personal examination and interview of Karl De-Gregory, *and any other information contained in his official record of which you were the custodian and had available to you,* did you make a diagnosis of the defendant?' "

The "other information" was not testified to by the medical expert. The expert stated that he had relied on it in reaching his opinion. This is a distinction.

The record clearly shows that: (1) the psychologist who administered the test was not present at the trial of defendant and, therefore, could not be cross-examined; (2) there was not any testimony that the test in question was properly administered as required by instructions; (3) neither the psychologist who administered the test nor Dr. Rood stated whether the conditions found on the date of the examination were temporary or permanent in nature; (4) the complained of testimony was admitted to prove the truth of the matter asserted therein; and (5) the trial court did not instruct the jury to limit the evidence for a particular purpose. We are compelled to hold that the evidence in question was hearsay and incompetent, and its admission was highly prejudicial to defendant.

Defendant is awarded a

New trial.

